IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WEST VIRGINIA HIGHLANDS
CONSERVANCY and SIERRA CLUB,

      Plaintiffs,

   v.                              Civil Action No. 2:19-CV-41
                                         (Judge Kleeh)

BROOKS RUN MINING COMPANY, LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

Pending before the Court is Plaintiffs' partial motion for summary judgment. For the reasons discussed herein, the Court **GRANTS** the motion.

## I.   PROCEDURAL HISTORY

This action is a citizen suit alleging violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201, et seq. (the "SMCRA"). On August 20, 2019, Plaintiffs, the West Virginia Highlands Conservancy, Inc. (the "West Virginia Highlands Conservancy"), the Ohio Valley Environmental Coalition,[1] and the Sierra Club (together, "Plaintiffs"), filed a Complaint for Declaratory and

---

[1] The Ohio Valley Environmental Coalition was dismissed as a party to this action on January 31, 2022. ECF No. 29.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

Injunctive Relief and for Civil Penalties against Defendant Brooks Run Mining Company, LLC ("Defendant").  ECF No. 1.  Plaintiffs bring two causes of action: (I) Clean Water Act § 402 permit violations and (II) SMCRA violations.

Defendant answered the Complaint on October 18, 2019.  ECF No. 7.  On August 2, 2021, Plaintiffs filed their motion for partial summary judgment, which is presently before the Court.  ECF No. 16.  The motion is fully briefed and ripe for review.

## II.  UNDISPUTED FACTS

The West Virginia Highlands Conservancy is a nonprofit organization that "works for the conservation and wise management of West Virginia's natural resources[.]"  Motion, Exh. H, ECF No. 16-8 (Cordell Decl.), at ¶ 2.  The organization is "dedicated to protecting our clean air, clean water, forests, mountains, and the health and welfare of the people that live here and those who visit to recreate."  Id.  Defendant is a coal mining company that operates the Seven Pines Mine in Webster County, West Virginia.  See Compl., ECF No. 1, at ¶ 9; see also Pl. Memo, ECF No. 17, at 2.  Discharges from the Seven Pines Mine flow into Laurel Creek and the Birch River.  See Pl. Memo, ECF No. 17, at 5.

To operate the Seven Pines Mine, Defendant has been issued two specific environmental permits that are at issue in this case.

2

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

The first, which is obtained through the National Pollutant Discharge Elimination System ("NPDES"), is Permit WV 1009885 (the "NPDES Permit").  See id. at 2; see also Motion, Exh. B, at ECF No. 16-2.  The second is West Virginia Surface Coal Mining and Reclamation Permit S201002 (the "SMCRA Permit").  See Pl. Memo, ECF No. 17, at 2; see also Motion, Exh. A, at ECF No. 16-1. Plaintiffs allege that Defendant has violated the terms of both permits because the Seven Pines Mine has been discharging excess levels of selenium into surrounding waters.  Defendant does not contest these allegations.

Plaintiffs attached to their motion a declaration from Jim Hecker ("Hecker"), who is co-counsel for Plaintiffs in this action. See Motion, Exh. C, at ECF No. 16-3.  Hecker compiled the violations summary for selenium levels discharged from the Seven Pines Mine.  See id. ¶¶ 1-2.  He obtained the information from Defendant's Discharge Monitoring Reports ("eDMRs"), which are maintained by the West Virginia Department of Environmental Protection ("WVDEP") on its website.  See id. ¶ 3.  The eDMRs are attached to Hecker's declaration as Attachment 2 and are also accessible online.[2]

Hecker also downloaded a copy of the effluent limitation

---

[2] https://apps.dep.wv.gov/eplogin.cfm.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

violation summary from the Environmental Compliance and History
Online ("ECHO") database for the Environmental Protection Agency
("EPA").  See id. ¶ 4.  This information is attached to Hecker's
declaration as Attachment 3 and is also accessible online.[3]  Based
on the eDMRs and the EPA ECHO effluent limitation violation
history, Plaintiffs assert that Defendant violated the NPDES
Permit 134 times, including 66 violations of daily maximum limits
and 68 violations of monthly average limits for a total of 2,165
days of violation.  See id. ¶ 5; see also Pl. Memo, ECF No. 17, at
11.  Plaintiffs allege that because the SMCRA Permit requires
compliance with the NPDES Permit, Defendant violated the SMCRA
Permit 134 times as well.  See Pl. Memo, ECF No. 17, at 12.

David Chadwick "Chad" Cordell ("Cordell") is a member of the
West Virginia Highlands Conservancy.  See Motion, Exh. H, ECF No.
16-8 (Cordell Decl.), at ¶ 2.  He often travels through the valley
next to the Seven Pines Mine.  Id. ¶ 5.  In years past, he would
stop and spend time enjoying streams, including the Birch River,
which now receive drainage from the mine.  Id.  He and his family
"would use the river to cool off and would flip over rocks to look
for bugs, crayfish, and other aquatic animals."  Id.

Now, Cordell worries about the ecological health of the

---

[3] https://echo.epa.gov/.

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                    2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

streams.  Id. ¶ 6.  Instead of wading in and exploring the water, he monitors the water quality.  Id.  Cordell no longer recreates in the streams around the Seven Pines Mine because of his concerns about selenium pollution.  Id. ¶ 9.  Cordell would like to fish in Laurel Creek and the Birch River, but he will not do so due to permit violations from the Seven Pines Mine.  Id. ¶ 12.  He would like to spend more time wading in, fishing in, and enjoying the Birch River, but he does not do so due to pollution.  Id. ¶ 14. He would be more likely to fish and wade in the Birch River and Laurel Creek areas, and enjoy them generally, if the Seven Pines Mine were to comply with permits.  Id. ¶¶ 15, 16.  Defendant has not challenged any of these asserted facts.

On June 4, 2019, Plaintiffs gave notice to Defendant, the EPA, the Office of Surface Mining Reclamation and Enforcement, and the WVDEP regarding Defendant's violations and Plaintiffs' intent to file a citizen suit.  See Motion, Exh. D, ECF No. 16-4 (Teaney Decl.), at ¶ 2.  On June 19, 2019, Plaintiffs gave a second notice of violations to Defendant's parent corporation and its registered agent.  Id. ¶ 3.  On July 11, 2019, the WVDEP issued an administrative order addressing Defendant's prior violations of the discharge requirements of Defendant's NPDES permits.  See Response, Exh. A, ECF No. 18-1.  On August 20, 2019, Plaintiffs

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

filed this action.  See ECF No. 1.  On December 8, 2020, public notice of the proposed Consent Order with the WVDEP was issued. See Response, Exh. B, ECF No. 18-2.  The Consent Order related to violations from October 1, 2017, to October 31, 2017, and assessed a penalty against Defendant of $125,000.00.  See id.  On January 13, 2021, the Consent Order was entered.  See Response, ECF No. 18, at 3.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

### IV.  DISCUSSION

Plaintiffs have moved the Court to enter summary judgment with respect to the following: (1) constitutional standing; (2) statutory jurisdictional requirements under the Clean Water Act and the SMCRA; (3) liability under the Clean Water Act; and (4) liability under the SMCRA.  They also ask the Court to issue injunctive relief.

In its Response, Defendant focuses only on statutory jurisdictional requirements.  Defendant argues that prosecution by the WVDEP has precluded this citizen suit.  Plaintiffs, in their Reply, cite a statutory exception to Defendant's argument and cite additional reasons why the WVDEP prosecution does not bar this suit.  For the reasons discussed herein, the Court finds Plaintiffs' arguments persuasive and finds that partial summary judgment is appropriate.

### A.  Constitutional Standing

Plaintiffs have moved for summary judgment on the issue of Article III standing even though standing has not been challenged by Defendant.  Further, in its Response, Defendant did not oppose Plaintiff's assertion of constitutional standing.  Still, the Court will analyze whether standing exists.  See Peters v. Aetna Inc., 2 F.4th 199, 214 n. 7 (4th Cir. June 22, 2021) ("Although

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

Appellees do not expressly raise a question of Article III standing, 'federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.'" (citing Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011))).

For a party to establish Article III standing, "(1) the plaintiff must have suffered an injury-in-fact, which (2) must be causally connected to the conduct complained of, and that (3) will likely be redressed if the plaintiff prevails." Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 252 (4th Cir. 2020) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). "In the environmental litigation context, the standing requirements are not onerous." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003)

### 1.   Injury-in-Fact

As to the first element, an injury-in-fact, a plaintiff must show that he "suffered 'an invasion of a legally protected interest,'" or, in other words, an injury that is "concrete and particularized." Id. at 252 (citing Lujan, 504 U.S. at 560). "An injury is particularized if it 'affect[s] the plaintiff in a

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

personal and individual way," and it "is concrete if it is 'de facto' — that is, if it 'actually exist[s].'"  Id. (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).

Injury-in-fact is an easy standard to meet for a plaintiff in an environmental case.  As the United States Court of Appeals for the Fourth Circuit has explained,

> [i]n an environmental case, the question is whether the plaintiff has suffered an injury, as opposed to whether the environment has actually been harmed. See Laidlaw, 528 U.S. at 181, 120 S.Ct. 693. Specifically, a plaintiff need only show that he used the affected area, and that he is an individual "for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity. Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); see also Laidlaw, 528 U.S. at 184, 120 S.Ct. 693 (holding that plaintiffs had established an injury in fact because the challenged activity directly affected their "recreational, aesthetic, and economic interests"); Defenders of Wildlife, 504 U.S. at 562–63, 112 S.Ct. 2130 ("[T]he desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing."); Gaston Copper, 204 F.3d at 159 (concluding that individuals' allegations that they would make greater recreational use of waterway except for concern over defendant's discharges sufficient for injury in fact).

Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., 268 F.3d 255, 263 (4th Cir. 2001).

In Piney Run, the Fourth Circuit found that an injury-in-fact

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

existed because the run's algae made the stream's rocks slippery and difficult for the organizational member to cross, the member had stopped allowing her horses to drink from the run because the water was not clear, and the algae made the stream less desirable to observe.  Id.  The Fourth Circuit has also found that injury-in-fact existed due to an organizational member's "use of the waters in th[e] area, and his reasonable concern that runoff from Gaston's facility is polluting the waters in the area[.]"  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 397 (4th Cir. 2011).  Thus, establishing an injury-in-fact is a low bar to clear for an environmental plaintiff.

Here, the Court finds that injury-in-fact exists through West Virginia Highlands Conservancy member Chad Cordell.  As discussed above, Cordell used to enjoy the Birch River, which receives drainage from Seven Pines Mine.  See Motion, Exh. H, ECF No. 16-8 (Cordell Decl.), at ¶ 2.  He and his family used to cool off in the river and flip over rocks to look for bugs, crayfish, and other aquatic animals.  Id. ¶ 5.  Now, Cordell no longer recreates in the streams that receive discharge from the Seven Pines Mine.  Id. ¶ 6.  Instead of wading in and exploring the water, he monitors the water quality.  Id.  He would like to fish in Laurel Creek and the Birch River, but he will not do so due to Seven Pines Mine's

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

permit violations.  Id. ¶¶ 12.  He has averred that he would like to spend more time wading in, fishing in, and enjoying the Birch River, but he does not do so due to pollution.  Id. ¶ 14.  He would be more likely to fish and wade in the Birch River and Laurel Creek areas, and enjoy them generally, if the Seven Pines Mines were to comply with its environmental permits.  Id. ¶¶ 15, 16.  For these reasons, Cordell has suffered an injury-in-fact.

    **2.   Traceability**

    To establish traceability, the Fourth Circuit has explained that "a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kind of injuries alleged in the specific geographic area of concern."  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 161 (4th Cir. 2000) (citation omitted).  Here, Defendant's own data show that it is discharging excessive levels of selenium from the Seven Pines Mine.  See Motion, Exh. C, ECF No. 16-3, at ¶ 5. As discussed above, Cordell's recreational and aesthetic interests have been diminished by the excess levels of selenium that are being discharged.  Therefore, traceability exists.

    **3.   Redressability**

    "The burden imposed by the redressability requirement is not onerous, and [p]laintiffs need not show that a favorable decision

11

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

will relieve [their] every injury. . . . It is enough to show that a favorable decision would be likely to remedy their injury." Roe v. Shanahan, 359 F. Supp. 3d 382, 408 (E.D. Va. 2019) (internal quotations and citations omitted), aff'd sub nom., Roe v. Dep't of Def., 947 F.3d 207 (4th Cir. 2020), as amended (Jan. 14, 2020). "For a plaintiff who is injured or threatened with injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress.  Civil penalties can fit that description." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 169 (2000).

Here, civil penalties and injunctive relief can redress injuries caused by violations of effluent limits and deter future violations.  Chad Cordell has stated that he would enjoy his trips to the affected streams more in the future if Defendant were meeting complying with its permits.  See Motion, Exh. H, ECF No. 16-8 (Cordell Decl.), at ¶¶ 15, 16.  Therefore, redressability exists.

### 4.  Organizational Standing

"An organization has representational standing when (1) at least one of its members would have standing to sue in its own right; (2) the organization seeks to protect interests germane to

12

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                    2:19-CV-41

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit." Gaston Copper Recycling, 204 F.3d at 155. As to the third element, when "the relief requested is not damages or injunctive relief specific to the standing declarant, but rather a 'purely legal ruling,'" participation of the individual members in the lawsuit is not required. Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs, No. 2:12-6689, 2014 WL 4102478, at *10 (S.D.W. Va. Aug. 18, 2014), aff'd, 828 F.3d 316 (4th Cir. 2016). Courts have recognized that money damages require individual participation. See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 151 F. Supp. 2d 723, 729 (W.D. Va. 2001) (finding that organizations could not proceed seeking money damages and could only see injunctive relief).

Here, Chad Cordell is a member of the West Virginia Highlands Conservancy and would have standing to sue in his own right.[4] See Motion, Exh. H, ECF No. 16-8 (Cordell Decl.), at ¶¶ 2-3. This action is germane to the West Virginia Highlands Conservancy's purpose, which is "protecting our clean air, clean water, forests,

---

[4] Because the West Virginia Highlands Conservancy has standing, the Court need not analyze standing with respect to the Sierra Club. See Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec., 983 F.3d 671, 681 (4th Cir. 2020) ("[O]nly one plaintiff needs to have standing for a court to hear the case." (citation omitted)).

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

mountains, and health and welfare of the people that live here and those who visit to recreate." Id. Finally, Plaintiffs seek a declaratory judgment and an injunction, and no money damages specific to Plaintiffs, so individual participation is not required. Organizational standing exists.

**5.   Ongoing Violation**

According to the Supreme Court, to establish federal jurisdiction, citizen plaintiffs must "allege a state of either continuous or intermittent violation — that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 49 (1987). On remand, the Fourth Circuit held that citizen suit plaintiffs can establish jurisdiction under this standard "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." 844 F.2d at 171–72. Violations do not cease to be ongoing unless "the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit." Id. at 172. Here, Plaintiffs' Complaint was filed on August 20, 2019, and Defendant's eDMRs show that it violated selenium limits

14

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

under the NPDES Permit after that date. Therefore, the jurisdictional test for ongoing violations is met.

**B.   Statutory Jurisdiction**

The Clean Water Act's objective is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). It is administered by the EPA, but it also allows a citizen, under certain conditions, to commence a civil action on his or her own behalf. Id. § 1365. To proceed with a citizen suit, the citizen must give 60 days' advance notice of his intent to file suit to the EPA, the State, and the alleged violator. Id. § 1365(b)(1)(A).

The Clean Water Act contains limitations on citizen suits when administrative enforcement actions are in progress. Id. § 1319(g)(6)(A) ("[A]ny violation . . . with respect to which a State has commenced and is diligently prosecuting any action under a State law comparable to this subsection . . . shall not be the subject of a civil penalty under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title."). However, subsection (B) contains exceptions to those limitations for any violations for which

> (i) a civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under this subsection, or

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

> (ii) notice of an alleged violation of section
> 1365(a)(1) of this title has been given in
> accordance with section 1365(b)(1)(A) of this
> title prior to commencement of an action under
> this subsection and an action under section
> 1365(a)(1) of this title with respect to such
> alleged violation is filed before the 120th
> day after the date on which such notice is
> given.

Id. § 1319(g)(6)(B).  In other words, a citizen suit seeking civil penalties is not barred if (1) it is filed before the administrative penalty action is commenced, or (2) notice of intent to file the citizen suit is provided before the administrative penalty action is commenced, and the citizen suit is then filed within 120 days of the notice.

While the parties have not cited, and the Court has not located, a case from the Fourth Circuit that defines when an administrative penalty action "commences," other circuit courts have addressed the question.  The Sixth Circuit, adopting the reasoning of the Second Circuit,[5] has found that an administrative penalty action is not commenced until an action is filed "in a court of the United States, or a State."  Jones v. City of Lakeland, 224 F.3d 518, 522 (6th Cir. 2000).  The Fifth Circuit rejected this reasoning, finding that an action commenced when a Compliance

---

[5] Friends of the Earth v. Consol. Rail Corp., 768 F.2d 57 (2d Cir. 1985).

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

Order was sent by the state environmental agency.  Lockett v. EPA,
319 F.3d 678, 689 (5th Cir. 2003).

The Eleventh Circuit has recognized that "most
courts . . . have concluded that issuance of an administrative
consent order . . . would satisfy the 'commencement' requirement."
McAbee v. City of Fort Payne, 318 F.3d 1248, 1251 n.6 (11th Cir.
2003).  The Seventh Circuit has focused on the inclusion of the
public in an action, holding that "an administrative action
'commences' at the point when notice and public participation
protections become available to the public and interested
parties."  Friends of Milwaukee's Rivers v. Milwaukee Metro.
Sewerage Dist., 382 F.3d 743, 756 (7th Cir. 2004).  The Eighth
Circuit has similarly found that an action "commenced" when
"interested third parties had a right to intervene, and certain
notice and hearing procedures became available to interested third
parties."  Arkansas Wildlife Fed'n v. ICA Americas, Inc., 29 F.3d
376, 380 (8th Cir. 1994).

Here, the following timeline is undisputed:

- June 4, 2019: Plaintiffs gave notice of
  Defendant's violations and intent to file a
  citizen suit.  See Motion, Exh. D, ECF No.
  16-4 (Teaney Decl.), at ¶ 2.

- June 19, 2019: Plaintiffs sent a copy of
  the notice of violations to Defendant's

17

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

---

parent corporation and its registered agent. Id. ¶ 3.

- July 11, 2019: The WVDEP issued an administrative order addressing Defendant's violations relating to prior violations of the discharge requirements of Defendant's NPDES permits. See Response, Exh. A, ECF No. 18-1.

- August 20, 2019: This citizen suit was filed. See ECF No. 1.

- December 8, 2020: Public notice of the proposed Consent Order was given. See Response, Exh. B, ECF No. 18-2.

- January 13, 2021: The Consent Order was entered. See Response, ECF No. 18, at 3.

Defendant argues that this citizen suit is precluded because the WVDEP commenced its administrative enforcement actions against Defendant before Plaintiffs filed their Complaint. Defendant does not specify which administrative enforcement action constituted "commencement." Plaintiffs, in reply, argue that this case fits into an exception to that limitation via 33 U.S.C. § 1319(g)(6)(B).[6]

---

[6] Additionally, Plaintiffs argue that the WVDEP administrative action would not preclude civil penalties because the civil penalty assessments are not "comparable" to the Clean Water Act's; that the WVDEP action would not bar claims for declaratory and injunctive relief; that the WVDEP action would not preclude SMCRA claims; and that the consent order did not address all Clean Water Act violations, so it cannot preclude all violations cited herein. Because the Court finds that this case falls within the 33 U.S.C. § 1319(g)(6)(B)(ii) exception, it need not address these arguments herein.

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN          2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

The Court does not find it necessary to determine the commencement date of the WVDEP action.  Under any of the different commencement scenarios set forth by the various circuit courts of appeal, Plaintiffs had previously given notice of their intent to file the citizen suit, and they filed the citizen suit within 120 days of that notice.  Therefore, this action falls within the exception listed in 33 U.S.C. § 1319(g)(6)(B)(ii), and this citizen suit is not statutorily barred.

**C.   Liability Under the Clean Water Act**

The Clean Water Act prohibits any person from discharging any pollutant without specific authorization pursuant to the terms of a permit.  33 U.S.C. § 1311(a).  One such permit can be obtained through the NPDES, which may be administered by the EPA or a state. Id. § 1342.  The EPA has authorized West Virginia to administer NPDES permits, and WVDEP does so pursuant to the West Virginia Water Pollution Control Act, W. Va. Code § 22-11-1, et seq.  The Clean Water Act authorizes citizens to bring suit for violation of any "effluent standard or limitation[.]"  33 U.S.C. § 1365(a).  It defines "effluent standard or limitation" to include "a permit or condition of a permit issued under section 1342 of this title that is in effect under this chapter[.]"  Id. § 1365(f).

Here, Defendant's discharges are regulated pursuant to the

19

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN                2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

NPDES Permit.  The reports attached by Plaintiffs indicate that Defendant has exceeded monthly and daily maximum selenium limits within the NPDES Permit.  See Motion, Exh. C, ECF No. 16-3 (Hecker Decl.).  Plaintiffs seek a declaration from the Court that Defendant is liable under the Clean Water Act for violating the selenium limits in its NPDES Permit a total of 134 times from March 2017 through August 2020, including 66 violations of the daily maximum limit and 68 violations of the monthly average limit.

In its Response, Defendant wholly ignored Plaintiffs' arguments regarding liability under the Clean Water Act.  Defendant put forth argument only with respect to statutory jurisdiction. Plaintiffs' asserted facts, therefore, are uncontested.  Defendant has failed to cite any contradictory facts, much less any that create a genuine issue for trial.  For these reasons, the Court finds that Plaintiffs are entitled to summary judgment on liability under the Clean Water Act with respect to selenium violations.

Each violation of a monthly average limit is treated as a violation for every day in the month in which the violations occurred, as opposed to a single violation for that month.  See United States v. Smithfield Foods, Inc., 972 F. Supp. 338, 340 (E.D. Va. 1997), aff'd, 191 F.3d 516, 527 (4th Cir. 1999).  The two limits "are included in the Permit for different reasons and

20

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

serve distinct purposes: daily maximum effluent limits protect the environment from the acute effects of large, single releases, and monthly averages protect against chronic effects occurring at lower levels." 191 F.3d at 527. As such, the Court finds that Defendant is liable for 2,165 days of Clean Water Act violations with respect to selenium limits.

**D.    Liability Under the SMCRA**

The SMCRA prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the federal Office of Surface Mining Reclamation and Enforcement or an approved state regulatory authority. See 30 U.S.C. § 1256. The State of West Virginia administers an approved surface mine regulatory program under the SMCRA. See 30 C.F.R. § 948.10. The SMCRA also authorizes any person adversely affected to bring an action in federal court to compel compliance. See 30 U.S.C. § 1270(a)(1).

The West Virginia SMCRA states that "[a]ny permit issued by the secretary pursuant to this article to conduct surface mining operations shall require that the surface mining operations meet all applicable performance standards of this article and other requirements set forth in legislative rules proposed by the secretary." W. Va. Code § 22-3-13(a). The WVDEP's regulations

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

provide that "[t]he permittee shall comply with the terms and conditions of the permit, all applicable performance standards of the Act, and this rule."  W. Va. C.S.R. § 38-2-3.33.c.  Prior to June 30, 2018, the applicable legislative rule stated:

> 14.5.b. Effluent Limitations. Discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards. The monitoring frequency and effluent limitations shall be governed by the standards set forth in an NPDES permit issued pursuant to W. Va. Code § 22-11 et seq., the Federal Water Pollution Control Act as amended, 33 U.S.C. 1251 et. seq. and the rules and regulations promulgated thereunder.

W. Va. C.S.R. § 38-2-14.5.b (previous version).  Since June 30, 2018, the rule has stated:

> 14.5.b. Effluent Limitations. Discharges of water from areas disturbed by surface mining activities shall be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 CFR part 434.

W. Va. C.S.R. § 38-2-14.5.b (current).

Here, Defendant's surface mining operations are regulated under its SMCRA Permit.  Plaintiffs seek summary judgment with respect to violations from March 2017 through August 2020, so both versions of W. Va. C.S.R. § 38-2-14.5.b have, at some point during this period, applied to the Seven Pines Mine.  Under either

WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN          2:19-CV-41

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

version, Defendant was required to comply with the Clean Water Act. As discussed above, Defendant did not comply with the Clean Water Act with respect to discharged selenium content from the Seven Pines Mine. Each of the Clean Water Act violations discussed above, therefore, also constitutes a violation of the SMCRA.

With respect to liability under SMCRA, again, Defendant has failed to contest it. Defendant has produced no facts that contradict Plaintiffs' asserted facts, much less asserted facts that create a genuine issue for trial. As such, the Court grants summary judgment for Plaintiffs with respect to selenium violations under the SMCRA. The Court finds that Defendant violated the SMCRA a total of 134 times from March 2017 through August 2020, including 66 violations of the daily maximum limit and 68 violations of the monthly average limit, for a total of 2,165 days of violations.

**E.   Injunctive Relief**

To be entitled to injunctive relief, a plaintiff must establish the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

23

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]

injunction.

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Here, Plaintiffs ask the Court to require Defendant to (1) comply with its Clean Water Act and SMCRA permits within one year, and (2) prepare a compliance plan within thirty days with specific steps and interim milestones to meet that deadline.

With respect to Defendant's violations under the Clean Water Act, the factors weigh in favor of an injunction. As to the first and second factors, the Court finds that an irreparable injury exists, and it cannot be adequately remedied by money damages. See Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e. irreparable.").[7]

As to the third factor, in cases concerning environmental damage, "the balance of harms will usually favor the issuance of injunction to protect the environment." Id. This case is no different. Finally, as to the fourth factor, given that the purpose of the Clean Water Act is "to restore and maintain the

---

[7] While the Amoco Court analyzed whether a preliminary injunction, as opposed to a permanent injunction, should be issued, the Court noted that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." 480 U.S. at 546 n.12.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), and given the clear violations of the NPDES Permit by Defendant, the Court finds that the public interest would not be disserved by an injunction. Overall, the factors weigh in favor of an injunction. Defendant is hereby **ENJOINED** from discharging selenium levels in excess of its NPDES Permit limitations in violation of the Clean Water Act and the SMCRA.

## V.  <u>CONCLUSION</u>

For the reasons discussed herein, the Court **FINDS** that Plaintiffs have established constitutional standing and statutory jurisdiction in this case. Plaintiffs' motion for partial summary judgment is **GRANTED** [ECF No. 16] with respect to liability for selenium pollution under the Clean Water Act and the SMCRA. Defendant is hereby **ENJOINED** from discharging selenium in excess of its NPDES Permit limitations. The issue of proper relief remains pending. The Court will schedule a status conference in the near future.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record. The Clerk is further directed to enter a separate order of judgment consistent with

25

**WV HIGHLANDS CONSERVANCY ET AL. V. BROOKS RUN**                    **2:19-CV-41**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON**
**JURISDICTION, LIABILITY, AND INJUNCTIVE RELIEF [ECF NO. 16]**

this Memorandum Opinion and Order.

    DATED: March 7, 2022

                                                /s/ Thomas S. Kleeh
                                                THOMAS S. KLEEH
                                                UNITED STATES DISTRICT JUDGE